FILED
SUPERIOR COURT
OF GUAM

2014 DEC 31 PM 2: 12

CLERK OF COURT
BY: _____



## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| BME & SONS, INC.,<br><br>              Plaintiff<br><br>v.<br><br>COBOW PACIFIC, LLC.,<br><br>            Defendant. | CIVIL CASE NO. CV0751-13<br><br>**FINDINGS OF FACT &**<br>**CONCLUSIONS OF LAW** |

### INTRODUCTION

This matter came before the Honorable Vernon P. Perez for a bench trial on July 25 & 28, 2014. Attorney Phillip Torres represented the Plaintiff. Defendant, pro se, was represented by Isagani Z. Dayao, Vice-President of Cobow Pacific, LLC. Having considered the evidence presented, the Court hereby makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

By a preponderance of the evidence, the Court makes the following findings of fact.

1. Plaintiff BME & Sons, Inc. ("Plaintiff" or "BME") and Defendant Cobow Pacific, LLC. ("Defendant" or "Cobow"), are both licensed construction companies on Guam that provide labor and engineering services.

2. In November of 2012, Defendant, through Vice President and General Manager Isagani Z. Dayao Jr. ("Dayao" or "Jun"), sought assistance from Plaintiff, through its Administrative Manager, Bernie Maranan ("Maranan"), to provide manpower for Defendant's construction project at Christian Dior, DFS Guam ("Dior Project").

---

*BME, Inc. & Sons v. Cobow Pacific, LLC.*
Case No. CV0751-13
Findings of Fact & Conclusions of Law



3. Plaintiff agreed to assist Defendant and the terms of that agreement were memorialized by an employee of Plaintiff's at Plaintiff's office. The agreement provided, in relevant part:

> Dear Mr. Dayao,
> [BME] would like to propose an initial estimated amount of USD Fifteen thousand Only ($15,000.00) to provide construction Labor only for the *completion of the above project*. Any amount in excess of the contract amount will be charged accordingly.
> $ 25.00 / hour – regular hour
> $ 30.00 / hour – overtime hour

(Def's Ex. I, Jul. 22, 2014). (emphasis added).

4. The project referred to was that described on the agreement as "DIOR Interior Fit-out, DFS Galleria." *Id.*

5. Plaintiff sent Defendant an initial list of employees who could be assigned to the project.

6. On November 7, 2012, Defendant requested the names of additional workers who could be assigned to the project over the next week. Plaintiff provided Defendant with that list.

7. After November 13, 2012, Defendant made additional requests for workers who could be assigned to the Dior project and also to a *second project at Bottega Veneta*, located at the Plaza Guam ("Bottega Project").

8. On November 20, 2012, Maranan sent an email to Dayao informing him of the need for BME to adjust the original rates. That email stated:

> Jun, during our discussion you just need man power support for a week and the overtime is minimal that's why I agreed on the rate I gave you. Please be informed that we are also paying overtime to our workers for time in half for 30 dollars is not enough for our overhead.
>
> Jun, because of our relationship I agree for the above cost knowing that it will only takes 7 days from November 6 to 13[,] 2012. Jun be known that I even sacrifice my own project to support you. Please considered adjustment cost for $30.00 skilled workers and paying time half on overtime, this new charges will start on 11-14-2012. Please advise me if you are in agreed to this rate.

(Def's Ex. B, Apr. 16, 2014).

9. That same day, Dayao replied to Maranan's email and stated in relevant part: "Sorry I was busy in the middle of getting the subject project prepared for shop opening so I was not able to speak with you. Anyway, I really appreciate your valuable support and continued assistance." *Id.*

10. Plaintiff sent invoices for its services to Defendant. The invoices reflect the $25 and $30 rates charged for work performed between November 7 and 13, 2012. After November 13, 2012, the invoices reflect the higher rates of $30 and $41.

11. On December 14, 2012, Maranan sent another email to Dayao, which stated in relevant part:

> After I(sic) week you are requesting more man power for another project at DFS Gallery for Christian Dior[1], after knowing this request I immediately send you e-mail that will have cost adjustment, please see below email.
> As I mention to you I sacrifice my project just to support you. I have big cost on my overhead plus I get additional wage bond to this project. My charges to you is not overkill as you mention during our telecom conversation. As you requested to reduce overtime pay, the most we can do is $41.00 dollars per overtime pay.

(Def's. Ex. C, Apr. 16, 2014).

12. Defendant paid for most of what was owed on the invoices except for the unpaid amount that Plaintiff's seek in this action ($9,085.80). (Digital Recording at 11:02:52, Jul 25, 2014).

13. In response to Plaintiff's numerous attempts to collect on the unpaid balance, Defendant largely attributed its delay in payment to nonpayment from Christian Dior.

//

//

---

[1] The evidence suggests that Maranan erroneously referenced the Dior Project instead of the Bottega Project.

# CONCLUSIONS OF LAW

14. To create an enforceable contract, there must be an offer, acceptance, and consideration. *See Mobil Oil v. Tendido*, 2004 Guam 7 ¶ 34; *see also* 18 GCA § 85102 (2014)("It is essential to the existence of a contract that there should be: 1) Parties capable of contracting; 2) Their consent; 3) A lawful object; and 4) A sufficient cause or consideration.").

15. In this case, the parties each signed a letter on November 6, 2012, the subject of which was described as a "Cost Proposal to provide construction labor." (Def.'s Ex. I, Nov. 6, 2012). Contained in the letter was Plaintiff's offer to provide Defendant with construction labor for an initial amount of $15,000.00 and specific rates to be applied for excess work. The signatures of both parties demonstrate Plaintiff's offer, Defendant's acceptance, and the consideration to be provided. Accordingly, the letter serves as an enforceable contract between the two parties.

16. Guam contract law provides that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 18 GCA § 87104 (2014). Further, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible subject, however, to the other provisions of this chapter." 18 GCA § 87105 (2014).

17. In addressing what evidence is to be considered in contract interpretation, the Supreme Court of Guam confirmed that this jurisdiction adheres to the "traditional approach." *Wasson v. Berg*, 2007 Guam 16 ¶ 16; *see also Guam United Warehouse Corp.v. Dewitt Transp. Servs.,* 2003 Guam 20 ¶ 24 ("[W]e 'look to the . . . four corners to determine the parties' intentions, which are controlling.' . . . 'If the language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contracts meaning, and a court determines the parties intentions from the plain meaning of the contractual language as a matter of law.'") (internal citations omitted).

18. In this case, the parties first dispute whether the agreed upon rates was for one week or for the completion of Defendant's project. Plaintiff argues for the former and Defendant

maintains that the signed agreement for the completion of the project is controlling. Both parties provided conflicting testimony as to their conversations leading up to the agreement. Because the contract is unambiguous, the Court will not consider the parties' prior discussions. *See Torres v. Torres*, 2005 Guam 2 ¶ 13 ("an ambiguity exists when a document 'on its face, is capable of two different reasonable interpretations.'") (internal citations omitted); *see id.* ¶ 37 ("[e]xtrinsic evidence may be considered when language in a document is ambiguous"). There is no ambiguity here. The four corners of the document simply provide that Plaintiff was to provide construction Labor only for the *completion of the above project,* at the specific rates of $25.00/ hour for regular hours and $30.00/ hour for overtime hours. (Def's Ex. I, Jul. 22, 2014). (emphasis added).

19. Furthermore, in order for the Court to consider extrinsic evidence, such evidence must comply with the parol evidence rule. *See Torres v. Torres*, 2005 Guam 22 ¶ 36 ("evidence that contradicts the written document cannot be considered by the court."). Because both parties' testimony of prior negotiations contradicts the written document, the Court will confine its analysis to the written document only.

20. Reviewing the four corners of the document, the Court hereby finds that Plaintiff was to provide Defendant with construction labor for the *completion* of the Dior project only, at an initial amount of $15,000 dollars, and at rates of $25.00 per regular hour and $30.00 per overtime hour for work in excess of the initial amount.

21. The next issue involves the Bottega Project and the higher labor rates of $30.00 per regular hour and $41.00 per overtime hour, some of which Defendant has paid. The parties are in dispute over whether the original contract was modified. Defendant emphasizes that he never agreed to the higher rates. Plaintiff maintains that Defendant agreed to the discounted higher rates of $30.00/$41.00 instead of $30.00/$45.00, as evidence by Defendant's partial payments reflecting the $30.00/$41.00 rates.

22. Guam law provides that a "[a] contract in writing may be altered by a contract, in writing, *or by an executed oral agreement,* and not otherwise." 18 GCA 89302 (2014).

The alteration of a contract, however, requires additional consideration. *See MElectric Coporation v. Phil-Gets (Guam) International Trading Corporation*, 2012 Guam 23 ¶¶ 28-30. In this case, Defendant, through Dayao, sent an email to Maranan on November 16, 2012, the subject of which read "BOTTEGA VENETA, the Plaza – ADDITIONAL MANPOWER. (Pl's. Ex. 6 at 5, Mar. 18, 2014). Therein, Defendant requested at least twelve skilled workers who were willing to work after midnight and the following morning, and a separate crew at the Bottega Veneta Project. *Id.* Subsequently, Maranan sent an email to Dayao on November 20, 2012, requesting that Defendant consider an adjustment of rates. *Id.* at 3. Dayao responded to Maranan's email and stated: "[s]orry I was in the middle of getting the subject project prepared for shop opening so I was not able to speak with you. Anyway, I really appreciate your valuable support and continued assistance." *Id.*

23. At the bench trial Plaintiff argued that the parties ultimately agreed upon the $35.00/$41.00 rates, after Plaintiff had initially proposed the higher rates of $35.00/$45.00. (Digital Recording at 10:59:59, Jul. 25, 2014). Plaintiff also pointed out that Defendant never actually complained of the rates until after the instant suit was filed. *Id.* at 11:04:52. Defendant argued that his response to Plaintiff's email was not an agreement. *Id.* at 12:03:00. In fact, Defendant pointed out that he only responded that way because he was stressed and tired. *Id.* Defendant also testified that he found the email distressing but knew that if he fought back, Plaintiff might not have sent any more workers and his projects will be affected. *Id.* at 12:19:38.

24. The Court's initial conclusion regarding the terms of the contract is relevant to whether an enforceable alteration of the contract took place. As previously stated, the contract only compelled Plaintiff to provide Defendant with construction labor for the *completion* of the *Dior project*, at an initial amount of $15,000 dollars, and at rates of $25.00 per regular hour and $30.00 per overtime hour for work in excess of the initial amount. Further complicating the matter is the fact that the Bottega project was not indicated in the contract, yet Defendant maintains that it should have been. Because the Court has

already determined that the contract called for specific rates for the completion of the Dior project only, any alteration of the contract would apply to terms outside of the contract, namely the Bottega project and the adjusted rates.

25. The next issue is whether the parties executed the oral agreement. As previously mentioned, a contract may be altered by an executed oral agreement. 18 GCA § 89302. The execution or non-execution of an oral agreement may be demonstrated by the parties' subsequent conduct. *See Joseph Montague, et. al v. Teleguam Holdings, LLC, et. al*, CV0154-08 at 10 (Sup. Ct. Guam, Mar. 26, 2009) (holding that the undisputed evidence showed that the plaintiffs have failed to show any action in conformity with the modified oral contract, as would be required to show a modification in other jurisdictions); *see also Diamond Woodworks, Inc. v. Argonaut*, 135 Cal. Rptr.2d, 736, 747 (overruled on other grounds) ("where the subsequent conduct of parties is inconsistent with and clearly contrary to provisions of the written agreement, the parties' modification setting aside the written provisions will be implied.")

26. In this case, Defendant argued that he did not agree to the adjusted rates. The parties' subsequent conduct, however, demonstrates that Plaintiff agreed to terms outside of the contract by sending manpower to the Bottega project, and that Defendant agreed to the adjusted rates of $35.00/$41.00 by paying invoices reflecting those terms.

27. Although Defendant argues that there was no consideration for the adjusted rates—because Plaintiff was already obligated to send manpower for the completion of the Dior project—the Court cannot ignore the fact that Plaintiff performed beyond the terms of the contract—at Defendant's request—when he sent additional manpower to the Bottega Project. The Court finds this additional work to be consideration for the alteration of the contract. On those bases, the Court finds that the original contract was subsequently altered, and the parties' subsequent conduct manifested their execution of such alteration.[2]

---

[2] If any of the foregoing findings of fact constitute conclusions of law, they are adopted as such; and if any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

## CONCLUSION

For the foregoing reasons, the Court hereby orders that Defendant pay Plaintiff the outstanding balance of $9,085.80, which is the remainder of what is owed pursuant to the parties' alteration of the contract.

**IT IS SO ORDERED** this 31st day of December, 2014.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA COURT BOX**
I acknowledge that a copy of the original hereto was placed in the court box of:

_TORRES LAW GROUP_

Date: 12·31·14 Time: 235PM

_A. SANTOS_
Deputy Clerk, Superior Court of Guam

RECEIVED FOR SERVICE:

Date: 12-31-14

Time: 2:46 pm

MS

Marshal, Superior Court of Guam